IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIRK N. PAULIN<br><br>**Plaintiff,**<br><br>v.<br><br>CHAD WOLF, ACTING SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>**Defendant.** | CIVIL NO. 2:19-CV-14748 |

## COMPLAINT

Plaintiff Dirk N. Paulin asserts his causes of action against defendant Chad Wolf, solely in his official capacity as Acting Secretary of the United States Department of Homeland Security, regarding the unlawful employment actions of its agency, the Federal Emergency Management Agency, as follows:

### THE PARTIES

1. Plaintiff is Dirk N. Paulin, a person of majority, domiciled in Louisiana and currently residing in North Carolina.

2. Defendant is Chad Wolf, solely in his official capacity, the Acting Secretary of the Department of Homeland Security (DHS), including its agency, the Federal Emergency Management Agency (*see* 6 U.S.C. § 112(a) establishing the Secretary of DHS as the head of the department *and also* 6 U.S.C. § 313(a) establishing FEMA).

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 2000e-3 *et seq*. (Title VII retaliation); and 42 U.S.C. § 2000e-16 (applicability of Title VII to federal employment) as more particularly set-out herein.

1

4. The Court has personal jurisdiction over Mr. Wolf, in his official capacity and as the proper defendant representing the United States Department of Homeland Security (and its agency, FEMA), because all of the unlawful employment practices alleged herein occurred in the state of Louisiana and give rise to the specific Title VII causes of action in this case, and thus Mr. Wolf, in his official capacity and as the proper defendant for DHS and FEMA, has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

5. Venue for Mr. Paulin's Title VII claim is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the alleged retaliatory employment practices occurred within this forum (specifically New Orleans), and Mr. Paulin would have continued to have been employed in his otherwise promoted positions in this forum but for the his retaliatory non-selection at issue in this case.

## PROCEDURAL AND STATUTORY ALLEGATIONS

6. At all relevant times, FEMA employed more than 500 employees.

7. In 2006, FEMA hired Mr. Paulin as a full-time employee.

8. Mr. Paulin has been continuously employed by FEMA since that time, and at all times relevant to this case, was assigned to FEMA's "Louisiana Integrated Recovery Office" in New Orleans, Louisiana.

9. On or about August 26, 2017 FEMA requested employees to volunteer to deploy from Louisiana to Houston as "Taskforce Lead Program Delivery Managers" in response to Hurricane Harvey relief efforts.

10. Such a deployment would have materially benefited the chosen volunteers with increased

pay, experience, and opportunity to earn objective qualifications towards promotion.

11. Mr. Paulin timely volunteered.

12. The FEMA decision-maker responsible for making the selection was LIRO Emergency Manager Supervisor, Eddie Williams, who was the final decision-maker for all LIRO Public Assistance management and personnel issues.

13. On or about September 26, 2017, Mr. Williams did not select Mr. Paulin for deployment to Houston, but instead selected three comparators who, upon information and belief, had no prior EEO activity against Mr. Williams or FEMA.

14. Upon information and belief, Mr. Williams retaliated against Mr. Paulin by not selecting him for deployment because Mr. Paulin had previously filed prior EEO complaints against Williams and FEMA, the most recent of which was EEO Charge No. HS-FEMA-00781-2013.

15. Mr. Paulin timely initiated EEO informal contact on or about October 30, 2017 alleging that his non-selection was because of, among other things, retaliation.

16. On November 16, 2017, Mr. Paulin received his Notice of Final Interview and Right to File Formal Complaint of Discrimination.

17. On November 29, 2017, Mr. Paulin timely filed his Individual Complaint of Employment Discrimination in this matter, No. HS-FEMA-00308-2018.

18. On March 16, 2018, Mr. Paulin timely amended his Complaint to assert a related claim of retaliation against Mr. Williams and FEMA for specifically failing or refusing to open a "Taskforce Lead Program Delivery Manager" task book for Mr. Paulin under FEMA's "Public Assistance New Delivery Model," which had the effect of procedurally denying Mr. Paulin the opportunity to deploy to disaster locations as a Taskforce Lead Program Delivery Manager (such as, specifically, to Houston in response to Hurricane Harvey).

19. On June 8, 2018, FEMA accepted Mr. Paulin's claims of retaliation against Mr. Williams and FEMA based on his non-selection of Mr. Paulin for deployment to Houston on or about September 26, 2019, and for additionally failing or refusing to open a Taskforce Lead Program Delivery Manager taskbook for Mr. Paulin under the Public Assistance New Delivery Model.

20. FEMA assigned an investigator to investigate Mr. Paulin's complaint.

21. That investigation specifically included whether Mr. Williams retaliated against Mr. Paulin based on his prior EEO complaints when Mr. Williams did not select Mr. Paulin for deployment to Houston on or about September 26, 2017, and further when Mr. Williams failed to open a Taskforce Lead Program Delivery Manager taskbook for Mr. Paulin under the Public Assistance New Delivery Model.

22. FEMA concluded its Report of Investigation on or about August 30, 2018.

23. On or about September 28, 2018, Mr. Paulin timely requested an administrative hearing into the matter with the EEOC.

24. On August 5, 2019, Mr. Paulin filed a formal request to withdraw his request for administrative hearing.

25. On August 6, 2019, EEOC Administrative Law Judge Nancy Graham granted the motion and remanded Mr. Paulin's complaint to Department of Homeland Security's Office for Civil Rights and Civil Liberties for final agency determination.

26. On September 24, 2019, DHS dismissed Mr. Paulin's complaint.

27. On September 26, 2019, DHS mailed notice of its decision to Mr. Paulin and his counsel.

28. Mr. Paulin has now fully exhausted his administrative claims in this matter, and now timely files this lawsuit within 90 days of receipt of DHS's final agency decision dismissing his complaint.

## FACTS

### A. The Plaintiff – Dirk Paulin

29. Dirk Paulin is a 48-year-old man and father, originally from New Orleans, who currently resides in North Carolina on assignment from FEMA Headquarters in Washington, D.C.

30. From 2006 until summer 2019, Mr. Paulin was assigned to FEMA's Louisiana Integrated Recovery Office in New Orleans.

31. Mr. Paulin was a capable performer who was at one time held a GS-12 grade with the agency.

32. At all relevant times in this case, Mr. Paulin's final decision-maker was FEMA employee Eddie Williams who served as the LIRO Emergency Management Supervisor and the final decision-maker with respect to all management and personnel decisions for LIRO's "Public Assistance" division.

### B. The Employing Agency – the Federal Emergency Management Agency

33. FEMA is a statutory agency of the United States Department of Homeland Security.

34. At all relevant times, FEMA employed more than 500 employees.

35. USBP's statutory mission is to reduce the loss of life and property and protect the United States from all hazards, including natural disasters, acts of terrorism, and other man-made disasters, by leading and supporting the Nation in a risk-based, comprehensive emergency management system of preparedness, protection, response, recovery, and mitigation.

36. Specific to this case, FEMA's LIRO was in charge of recovery and relief efforts throughout Louisiana related to Hurricanes Katrina, Rita, and other disasters.

37. FEMA's largest grant and assistance program, and the program that encompassed the most work at LIRO during the relevant times of this case, is FEMA's "Public Assistance" ("PA")

program.

38. Prior to September 2017, FEMA procedures and personnel staffing related to its PA program were encompassed within its "PA Delivery Model."

39. Beginning in September 2017 and continuing through today, FEMA transitioned to a revised set of procedures and personnel structures related to its PA program known as the "New Delivery Model."

40. At all relevant times in this case, Mr. Paulin worked within FEMA's PA program (both the old and new delivery models) under the final decision-making authority of Eddie Williams.

C. **FEMA's Personnel and Public Assistance Delivery Structure**

41. Prior to September 2017, under the old PA Delivery Model, Mr. Paulin held the job title of "Public Assistance Coordinator Lead," and held (at different times based on various downsizing at LIRO) the associated paygrades of GS-11 and GS-12.

42. As a PAC Lead, Mr. Paulin coordinated grant relief for disasters and supervised the work of multiple subordinates.

43. The next-highest promotion after PAC Lead was a PAC Taskforce Lead, which included most of the same duties as a PAC Lead, but also included the responsibility to supervise PAC Leads and perform quarterly and yearly performance reviews of subordinates.

44. Within the old and new PA delivery models, the process for obtaining promotion requires obtaining and then completing a "taskbook" for the sought-after promotion.

45. Generally, FEMA's promotion system with its PA program works like this:

    (a) An employee is placed into a new position either at the time of hire or otherwise as a "trainee" in that position.

    (b) A taskbook is opened for the trainee in that position.

(c)   The trainee completes the taskbook and becomes "qualified" in that position.

(d)   The now-qualified employee requests a new taskbook for a sought-after promotion.

(e)   The qualified employee completes the taskbook for the sought-after promotion and becomes "qualified" to perform the promoted work.

(f)   The now promoted-qualified employee is authorized to perform that promoted work when it becomes available.

(g)   The now promoted-qualified employee becomes eligible for paygrade and other title promotions within FEMA.

46. Importantly, under either the old or new PA delivery modes, and specifically under LIRO personnel policy in effect during the relevant times of this case, the only employees eligible to deploy for particular work-assignments were those employees who were either trainees or qualified in the job titles required to work those assignments.

47. Also importantly, when FEMA transitioned from the old to new PA delivery models, FEMA substantially revised the personnel classification system, such that former job classifications like Public Assistance Coordinator and PAC Lead were abolished and replaced by a new classification called the Program Delivery Manager ("PDMG").

48. The closest analogue to the former PAC position was the new PDMG position.

49. The closest analogue to the former PAC Taskforce Leader was the new Taskforce Lead Program Delivery Manager (TFLPDMG).

50. Finally, immediately prior to September 2017 and FEMA's transition to the New PA Delivery Model, Mr. Paulin held the rank of a "qualified" Public Assistance Coordinator and

possessed an open taskbook for PAC Taskforce Lead.

**D. Mr. Williams Uses His Discretion to Demote Mr. Paulin during the Transition to the New PA Delivery Model and Thereby Deny Him Deployment Opportunities as a TFLPDMG**

51. Upon information and belief, in August 2017, in the runup to FEMA's transition from the old to new PA delivery model, FEMA directed Eddie Williams to designate new job classifications for each of his subordinates within LIRO's PA division.

52. Without telling him, Eddie Williams used his discretion to effectivey demote Mr. Paulin from a qualified PAC Lead with an open taskbook for PAC Taskforce Lead to a PDMG trainee.

53. In effect, Mr. Williams's decision stripped Mr. Paulin of his analogue PAC qualification such that before Mr. Paulin could ever compete for an open Taskforce Lead position, he would have to re-qualify as a PDMG.

54. Upon information and belief, the appropriate re-classification for Mr. Paulin under the New PA Delivery Model would have been as a Taskforce Lead Program Delivery Manager trainee (TFLPDMG trainee), because prior to FEMA's transition to the New Delivery Model Mr. Paulin was, in fact, training as a PAC Taskforce Lead, which is the direct analogue of the TFLPDMG trainee under the new delivery model.

55. Upon information and belief, however, Mr. Williams holds animus against Mr. Paulin because of Mr. Paulin's prior EEO complaints directed at Mr. Williams and FEMA.

56. Upon information and belief, Mr. Williams specifically demoted Mr. Williams during the reclassification process to a PDGM trainee in retaliation against Mr. Paulin for his prior protected EEO activity.

57. Further, Mr. Williams did not directly tell Mr. Paulin that he had been demoted during the re-classification process, and Mr. Williams did not actually change Mr. Paulin's daily job

responsibilities at LIRO.

### E. Mr. Williams Refuses to Deploy Mr. Paulin to Houston in Response to Hurricane Harvey

58. On or about August 26, 2017, FEMA directed Mr. Williams to select three employees to deploy to Houston in response to Hurricane Harvey to perform work as Taskforce Lead Program Delivery Managers.

59. FEMA also directed Mr. Williams to deploy himself to Houston to supervise the TFLPDMGs during their deployment.

60. Within FEMA, active deployments to disaster areas are materially beneficial to employees in terms of increased pay, experience, and the opportunity to perform work that objectively qualifies the employee for future promotion.

61. In response to FEMA's request, Mr. Williams or his agent sent an email to all LIRO staff requesting volunteers for the deployment.

62. Mr. Paulin timely applied.

63. However, Mr. Williams did not select Mr. Paulin for the deployment.

64. On or about September 26, 2017, Mr. Williams selected and deployed three comparator employees, J.H., D.S., and A.M().,[1] to Houston.

65. Upon information and belief, Mr. Williams had used his discretion during the re-classification process to classify at least J.H., D.S. as TFLPDMG trainees such that they were eligible to deploy in that capacity.

66. Upon information and belief, J.H., D.S., and A.M. had not made any prior EEO complaints about Mr. Williams.

---

[1] Plaintiff uses these employees' initials to maintain their privacy in this publicly filed document, but will identify them to defendant by full name during discovery.

67. Per both FEMA and LIRO policy at the time, Mr. Williams could not have procedurally selected Mr. Paulin for deployment to Houston as a TFLPDGM because Mr. Paulin did not have the current job classification as a TFLPDMG trainee.

68. Upon information and belief, Mr. Williams specifically demoted Mr. Paulin during the re-classification procedure as a PDGM trainee instead of a TFLPDGM trainee to, among other things, prevent Mr. Paulin from deploying as a TFLPDGM and otherwise to materially and adversely affect Mr. Paulin's career in FEMA in terms of pay, experience, and promotion.

69. As an alternative or additional allegation in this complaint, Mr. Paulin specifically alleges that upon information and belief Mr. Williams did not actually make any re-classification decisions until he received instructions from FEMA on August 26, 2017 to deploy three TFLPDMGs to Houston in response to Hurricane Harvey, and Mr. Williams specifically demoted Mr. Paulin during the re-classification process to prevent him from deploying to Hurricane Harvey both out of general animus and also because Mr. Williams did not want to personally work with Mr. Paulin during the deployment because of that animus.

70. Upon information and belief, Mr. Williams made these decisions in retaliation against Mr. Paulin because of his prior protected EEO complaints against Mr. Williams.

71. At all times, Mr. Williams took these unlawful employment actions against Mr. Paulin purposefully and within the course and scope of his managerial authority and job duties at FEMA.

72. At all times, FEMA either knew or had recklessly disregarded the knowledge that Mr. Williams was systematically engaged in unlawful retaliation against Mr. Paulin, including the adverse employment actions alleged in this case.

73. On October 30, 2017, Mr. Paulin initiated informal EEO contact and complained that his non-selection for deployment to Hurricane Harvey was based on, among other things, retaliation

because of his prior EEO complaints against Mr. Williams.

74. Later, on or about February 1, 2018, Mr. Paulin attempted to access his job-classification information and learned, for the first time, that he had been re-classified as a PDMG trainee rather than a TFLPDMG trainee.

75. Mr. Paulin timely amended his formal complaint of discrimination in this matter to assert this related retaliatory demotion (that is, specifically, that Mr. Williams failed to open a TFLPDMG taskbook for Mr. Williams during the reclassification process); FEMA investigated these matters included within this complaint; and ultimately Mr. Paulin timely filed this lawsuit within 90 days of his receipt of DHS's final agency decision dismissing Mr. Paulin's complaint.

76. Eventually, in 2019, Mr. Paulin was able to organizationally transfer from LIRO to FEMA headquarters in Washington, D.C., and is now on deployment to North Carolina, no longer under the retaliatory and unlawful management of Eddie Williams.

**F.      The Aftermath**

77. Mr. Paulin is out significant lost wages, experience, and promotion opportunity because Mr. Williams refused to open a TFLPDMG task book for Mr. Paulin during FEMA's re-classification project, that is to say, because Mr. Williams failed to reclassify Mr. Paulin as a TFLPDMG trainee.

78. Even today, Mr. Paulin is still classified as a PDMG trainee rather than a TFLPDMG trainee, and is out the lost wages, experience, and promotion opportunity inherent to that demotion.

 79. Mr. Paulin is specifically out lost wages, experience, and promotion opportunity directly related to Mr. William's unlawful non-selection of Mr. Paulin to deploy to Houston in response to Hurricane Harvey.

80. Mr. Paulin has suffered mental anguish, loss of enjoyment of life, stress, and anxiety related

to Mr. Williams's unlawful retaliation in this case.

81. Mr. Paulin has suffered out-of-pocket expenses caused by Mr. Williams's unlawful retaliation in this case.

82. Mr. Paulin is out both attorney's fees and costs incurred in bringing this lawsuit.

## CAUSES OF ACTION

### Unlawful Retaliation Under Title VII

83. Mr. Paulin states a cause of action against defendant for unlawful retaliation concerning (1) his non-selection for deployment as a TFLPDMG to Houston in response to Hurricane Harvey, and (2) Mr. Williams's refusal to open a TFLPDGM task book for Mr. Paulin in the position of a TFLPDGM trainee, instead demoting Mr. Paulin to a PDMG trainee under the New PA Delivery Model.

84. Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. §2000e-3(a). In a retaliation case, "an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)). Just as in a Title VII discrimination case, an employer remains vicariously liable for the acts of its decision-maker when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989). A

federal employer who violates Title VII is liable for the victim's back wages, front wages, reinstatement, statutory damages, attorney's fees, and litigation costs.

85. In this case, as alleged, Mr. Paulin was a documented performer with years of experience at LIRO as a Public Assistance Coordinator Lead within its PA Delivery division. Prior to FEMA's re-classification to the New PA Delivery Model, Mr. Paulin had a PAC Taskforce Lead taskbook open to obtain his qualification in that job classification, and was already discharging at LIRO the majority of substantive responsibilities of a Taskforce Lead. However, Mr. Paulin had previously filed protected EEO complaints against Mr. Williams and FEMA and, upon information and belief, Mr. Williams held animus against Mr. Paulin because of it. When FEMA directed Mr. Williams to re-classify his PA division employees to classifications under the new Delivery Model, Mr. Williams would have appropriately re-classified Mr. Paulin as a TFLPDMG trainee but for his retaliatory animus. But, because of his retaliatory animus, Mr. Williams re-classified and demoted Mr. Paulin as a PDMG trainee. Further, upon information and belief, Mr. Williams specifically failed to open Mr. Paulin a TFLPDMG taskbook under the new PA Delivery Model, and specifically demoted Mr. Paulin as a PDMG trainee, so that Mr. Paulin would be ineligible to deploy to Houston in response to Hurricane Harvey.

86. The net effect of Mr. Williams's unlawful retaliation was that not only is Mr. Paulin out the lost wages, experience, and promotion opportunities related to the Hurricane Harvey deployment, but Mr. Paulin is out the lost wages, experience, and promotion opportunities from having been effectively demoted as a PDMG trainee rather than a TFLPDMG trainee for the past two years.

87. Accordingly, the Department of Homeland Security and its agency, the Federal Emergency Management Agency, are liable for all actual and statutory damages suffered by Mr. Paulin

resulting from Mr. Williams and FEMA's illegal and retaliatory employment actions, including, but limited to, back pay, front pay, compensatory damages, mental anguish, loss of enjoyment of life, out of pocket expenses, and Mr. Paulin's reasonable attorney's fees incurred in this action, and FEMA is liable to reinstate Mr. Paulin to the most senior position for which Mr. Paulin would encumber today but-for Mr. Williams and FEMA's retaliation.

## JURY DEMAND

Mr. Paulin requests a trial by jury on all claims and causes of action asserted in this matter.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Dirk N. Paulin prays that his complaint be deemed good and sufficient; that it and summons be served upon defendant Chad Wolf, solely in his official capacity as Acting Secretary of the United States Department of Homeland Security; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant for (1) all damages and equitable relief due to plaintiff, including compensatory damages, statutory damages, costs, attorney's fees, and legal interest from the date of demand; (2) an injunction ordering defendant to reinstate Mr. Paulin to the most senior position within FEMA for which Mr. Paulin would occupy today but-for FEMA's unlawful retaliation; and (3) an injunction prohibiting defendant from engaging in all current and future retaliation against Mr. Paulin and all other similarly situated employees, and for all other general and equitable relief plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Counsel for Dirk Paulin*

15