UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIRK N. PAULIN | CIVIL ACTION |
| VERSUS | NO. 19-14748 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | SECTION "R" (3) |

**ORDER AND REASONS**

Before the Court is defendant Alejandro Mayorkas, Secretary of the United States Department of Homeland Security's[1] motion for summary judgment on plaintiff's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2] Plaintiff opposes the motion.[3] Because issues of material fact remain in dispute, the Court denies the motion.

## I. BACKGROUND

Plaintiff, Dirk N. Paulin, was assigned to the Federal Emergency Management Agency's ("FEMA") Louisiana Integrated Recovery Office

---

1 FEMA is part of the Department of Homeland Security. Alejandro Mayorkas, the named defendant, is the current Secretary of the Department.

2 R. Doc. 22.

3 R. Doc. 23.

("LIRO") in New Orleans from 2006 to 2019.[4] During his assignment, plaintiff was supervised by LIRO's Emergency Management Supervisor, Eddie Williams.[5] In 2009, 2012, and 2013 plaintiff filed three EEO complaints against Williams.[6]

In 2017, FEMA restructured its FEMA Qualification System ("FQS"), an internal system the agency uses to classify its employees.[7] An employee's FQS title determines "the type of work, deployments, and supervisory responsibilities [employees] are assigned on a daily basis."[8] The purpose of FQS titles remains the same under both the "Old FQS Delivery Model" and the "New FQS Delivery Model," but each employee received a new title as part of the restructuring.[9] Williams, along with another supervisor, Albert Walters, was directed to classify LIRO employees' titles under the New FQS Delivery Model.[10]

---

4 R. Doc. 1 ¶ 30.
5 *Id.* ¶ 32.
6 *Id.* ¶ 14.
7 *Id.* ¶ 13.
8 R. Doc. 23-2 ¶ 5 (Paulin Declaration); *see also* R. Doc. 23-4 at 164:21-165:2 (Williams Deposition) (explaining that under FEMA's "organizational structure," employees' FQS titles determined whether they were "qualified" for a deployment); *id.* at 44:3-21 (Ali Deposition) (comparing levels of supervisory responsibility between different FQS titles).
9 R. Doc. 23-2 ¶ 13 (Paulin Declaration); *see also* R. Doc. 27 at 1.
10 R. Doc. 27-2 at 96:9-25 (Walters Deposition); R. Doc. 23-2 ¶ 14 (Paulin Declaration).

Under the old model, Paulin held the title of "Public Assistance Coordinator Lead" or ("PAC Lead").[11] Additionally, plaintiff asserts that he had "an open task book" for the position of "Task Force Leader" or "TFL."[12] Under FEMA's promotional system, completing a "task book" is how an employee qualifies for a promotion to a new position.[13] When FEMA management "opens" a task book for an employee, it marks the beginning of that employee's training for a more senior position. The employee's actual promotion occurs upon completion of the task book.[14] Paulin asserts that, because he had a task book open for Task Force Leader, he was eligible to train for that position, which in turn, made him eligible for supervisory work and deployments.[15]

Under the new model, Williams appointed Paulin to the "Program Delivery Manager" or "PDMG" position, and he did not open a Task Force Leader task book for Paulin.[16] Paulin represents that his PDMG title was a demotion in terms of his "title, supervisory responsibilities, deployment opportunities, and leadership opportunities compared with [his] prior [PAC

11 R. Doc. 23-4 at 95:1-5 (Williams Deposition); R. Doc. 1 ¶ 41.

12 R. Doc. 1 ¶¶ 50 & 52; R. Doc. 23-2 ¶ 13 (Paulin Declaration).

13 R. Doc. 1 ¶ 45.

14 *Id.*

15 R. Doc. 23 at 4.

16 R. Doc. 23-2 ¶ 14 (Paulin Declaration); R. Doc. 27-1 at 162:1-3 (Williams Deposition).

Lead] title."[17] He also notes that Williams's refusal to open a task book excluded Paulin "from supervisory training and work opportunities necessary to advance his career."[18] Plaintiff further alleges that Williams assigned him a lower-level FQS title in retaliation for plaintiff's previous EEO complaints against Williams.[19] Defendant disputes plaintiff's allegation of retaliation, asserting that plaintiff cannot show that "any of the allegedly retaliatory actions changed anything about his employment with FEMA."[20]

Plaintiff additionally alleges that Williams retaliated against him by not selecting him for a deployment.[21] In August 2017, FEMA asked employees to volunteer to deploy to Houston, Texas to assist with Hurricane Harvey relief efforts.[22] Paulin volunteered for this deployment.[23] Williams was responsible for selecting individuals for the deployment.[24] At the end of September 2017, Williams announced the employees he selected for deployment, which did not include plaintiff.[25] Plaintiff represents that, because he was not selected for this deployment, he lost the opportunity to

---

17 R. Doc. 23-2 ¶ 14 (Paulin Declaration).
18 R. Doc. 23-1 ¶ 4.
19 R. Doc. 23 at 3-4.
20 R. Doc. 22-1 at 6.
21 R. Doc. 23 at 9.
22 R. Doc. 23-1 ¶ 9.
23 *Id.* ¶ 11.
24 *Id.* ¶ 12.
25 *Id.* ¶ 13.

gain "valuable supervisory experience" that would be necessary for him to "qualify for future promotions."[26] Defendant counters that Williams passed over Paulin not in retaliation, but "because [plaintiff] was not a TFL trainee or candidate and therefore was not qualified under the organizational structure."[27] Plaintiff concedes that his FQS title rendered him ineligible for consideration, but represents that he would have been eligible if Williams had not "constructively demoted [him] to the PDMG position," and had opened his task book for the supervisory Task Force Leader position.[28]

On October 30, 2017, plaintiff initiated an EEO informal contact about Williams's alleged retaliation,[29] and timely filed his Individual Complaint of Employment Discrimination on November 29, 2017.[30] FEMA opened an investigation into Paulin's claims that Williams retaliated against him by: (1) not selecting him for deployment during Hurricane Harvey, and (2) refusing to open a Task Force Leader task book for Paulin under the new model.[31] On August 30, 2018, FEMA concluded its investigation, and the Department of Homeland Security's Office for Civil Rights and Civil Liberties dismissed

26 R. Doc. 23 at 9.
27 R. Doc. 27 at 2.
28 R. Doc. 23 at 4.
29 R. Doc. 1 ¶ 15.
30 *Id.* ¶ 17.
31 *Id.* ¶¶ 19-21.

plaintiff's complaint.[32] On December 23, 2019, plaintiff filed a complaint in this court, raising the same allegations of retaliation.[33]

Defendant now moves for summary judgment on plaintiff's retaliation claims, contending that Paulin has failed to show that he suffered an adverse employment action.[34] Plaintiff opposes the motion, asserting that Williams's decision to appoint him as a PDMG without an open TFL task book was an adverse employment decision because it prevented him not only from deploying to Houston for Hurricane Harvey relief, but also materially harmed his "entire FEMA career from a supervisory and promotion standpoint."[35] The Court considers the parties' arguments below.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence

32 *Id.* ¶¶ 22, 26.
33 *Id.*
34 R. Doc. 22.
35 R. Doc. 23-2 ¶ 27 (Paulin Declaration).

in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

Title VII makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). In order to state a *prima facie* retaliation claim, a plaintiff must allege that (1) he was engaged in a protected activity; (2) an

adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). If the plaintiff makes this *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that defendant's explanation is a pretext for unlawful retaliation. *Id.* A plaintiff who cannot establish a *prima facie* case cannot survive a summary judgment challenge. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427-29 (5th Cir. 2000). However, "[t]he burden of establishing a prima facie case . . . is not onerous." *Wiley v. Glassman*, 511 F.3d 151, 155-56 (D.C. Cir. 2007) (per curiam) (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

The only aspect of plaintiff's *prima facie* retaliation claim that defendant challenges is whether plaintiff has shown that defendant took an "adverse employment action" against him.[36] The Court therefore limits its analysis to whether plaintiff has made out his *prima facie* showing that he suffered from a materially adverse employment decision. *See Celotex*, 477

---

36 R. Doc. 22 at 1 ("Plaintiff Dirk N. Paulin cannot establish a *prima facie* case of retaliation because Plaintiff did not suffer any materially adverse employment action."); *see also* R. Doc. 23 at 5.

U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] it believes demonstrate the absence of a genuine issue of material fact.").

For an action to be an "adverse employment action" in the retaliation context, the plaintiff must show that a reasonable employee would have found the action to be "materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) ("For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context."). An employment action is not materially adverse if it amounts only to "petty slights or minor annoyances." *Burlington*, 548 U.S. at 68. However, the action "also need not rise to the level of ultimate employment decisions." *Welsh*, 941 F.3d at 827; *Burlington*, 548 U.S. 60, 68 (rejecting the Fifth Circuit's "ultimate employment" standard, "which limit[ed] actionable retaliatory conduct to acts such as hiring, granting leave, discharging, promoting, and compensating").

Additionally, the Fifth Circuit has noted that a "lateral reassignment to a position with equal pay could amount to a materially adverse employment action in some circumstances," and has looked to whether the new position was objectively more arduous or less prestigious, whether the new position had worse hours, whether it would objectively be viewed as a demotion or as embarrassing, and whether the new position stripped the employee of "significant responsibilities." *Aryain*, 534 F.3d at 485; *see also Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001) ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action.").

Here, Paulin asserts that defendant engaged in two retaliatory acts that constitute adverse employment actions: (1) Williams's refusal to open a Task Force Leader task book for plaintiff, and instead assigning plaintiff a less senior title during FEMA's restructuring; and (2) plaintiff's non-selection for a deployment to Houston in response to Hurricane Harvey.[37] It is undisputed that plaintiff was not considered for deployment to Houston for Hurricane Harvey because of his PDMG title and lack of an open TFL task book.[38] Thus, plaintiff's two identified retaliatory acts both stem from his

37 R. Doc. 1 ¶ 83.

38 R. Doc. 23-2 ¶ 19 (Paulin Declaration) ("Mr. Paulin asked to be deployed to Houston . . . [but] [b]ecause Mr. Paulin had been

assigned role. The Court thus examines plaintiff's role assignment during the restructuring, including Williams's failure to open a TFL task book, as the basis for his retaliation claim.

Paulin argues in his opposition brief that his reassigned title was a materially adverse employment action because "it caused a change in standing among [his] coworkers; changed [his] job duties and responsibilities; [and] affected [his] future employment opportunities (including [his] ability to meaningfully compete for higher paying promotions)."[39] Relatedly, he argues that it prevented him from qualifying for public assistance deployments in response to natural disasters, like Hurricane Harvey, which is a way in which FEMA employees "develop the skills, training, experience, and leadership necessary to advance within the agency."[40] Plaintiff points to the deposition testimony of Jim Ali, plaintiff's former supervisor, who testified that plaintiff's former role came with "greater responsibilities" than his current role.[41] Ali also testified that in

constructively demoted to the PDMG position and did not have an open task book for the supervisory Task Force Leader [TFL] position, Mr. Paulin was excluded from consideration."); R. Doc. 27 at 2 ("Plaintiff was not chosen to deploy for Hurricane Harvey because he was not a TFL trainee or candidate and therefore was not qualified staff under the organizational structure.").

39 R. Doc. 23 at 7-8.

40 R. Doc. 23-2 ¶ 16 (Paulin Declaration).

41 R. Doc. 23-3 at 36:23-37:4 (Ali Deposition).

2016 plaintiff served as a Task Force Leader for a particular disaster.[42] Ali further noted that, under FEMA's new model, the "closest, most equivalent" title to plaintiff's former role would be a TFL title,[43] not plaintiff's assigned PDMG position.[44]

Defendant counters that Paulin would not have been designated as a TFL nor assigned a TFL task book regardless of whether he had engaged in any protected activity, because he did not have the requisite experience.[45] Defendant asserts that plaintiff "was designed a PDMG task book with the new delivery model because Plaintiff's previous positions as PA crew leader and PAC crew leader were consistent with the role of a PDMG and therefore equivalent to his previous experience."[46] To support this assertion, defendant points to Williams's testimony that employees who held similar positions to plaintiff were also designated a PDMG.[47] Defendant also relies

42 *Id.* at 59:19-25.

43 Parties refer to both the old model position "PAC Taskforce Leader," which plaintiff had a task book open for, and the position under the new model, Taskforce Lead Program Delivery Manager ("TFLPDMG") as "Task Force Leader" or "TFL."

44 R. Doc. 23-3 at 44:10-15 (Ali Deposition).

45 R. Doc. 27 at 1-2.

46 *Id.*

47 *Id.* at 2; R. Doc. 27-1 at 163:18-164:4 (Williams Deposition).

on Walters's testimony that he and Williams determined employee titles under the new model based on the employee's "current titles."[48]

On this record, drawing all reasonable inferences in favor of Paulin, the Court finds there is a genuine issue of material fact as to whether Paulin's new PDMG title was a materially adverse employment action that could have dissuaded a reasonable employee from complaining of unlawful discrimination. *See Burlington*, 548 U.S. at 68. Although defendant asserts that neither plaintiff's "non-selection nor lack of a task book resulted in any decrease in pay, title, or grade,"[49] finding an "adverse employment action" under Title VII requires a broader inquiry than just whether plaintiff suffered a loss in pay or formal title. *See Serna*, 244 F.3d 483 ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action.").

Although defendant contends that plaintiff's previous role "was equivalent" to the PDMG title,[50] plaintiff has created an issue of fact as to whether he was assigned to a less prestigious title, resulting in a significant reduction in his responsibilities. A reduction in prestige and responsibility, in certain cases, is sufficient to show an adverse employment action. *See*

48 R. Doc. 27 at 2; R. Doc. 27-2 at 76:9-20 (Walters Deposition).
49 R. Doc. 22-1 at 6.
50 R. Doc. 27-1 at 162:19-25 (Williams Deposition).

*Clemmer v. Irving Indep. Sch. Dist.*, No. 13-4997, 2015 WL 1757358, at *4 (N.D. Tex. Apr. 17, 2015) (holding that plaintiff "was subjected to an adverse employment action when she was transferred to the less prestigious position of Elementary Dean"); *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 898-99 (5th Cir. 2012) (finding an adverse employment action when plaintiff was "stripped . . . of his European sales responsibilities" which left "him only responsible for sales in the United States"). Here, plaintiff has introduced summary judgment evidence of his reduced title and responsibility, including Ali's testimony that he believed plaintiff's previous title and responsibilities are most comparable to the title of TFL under the new model,[51] and his assessment that plaintiff was qualified to serve as a TFL under the new model, especially because plaintiff had previously served in that capacity in 2016.[52] Additionally, plaintiff's own declaration states that under the old model he "exercised significant supervision over subordinate employees," whereas he is now in "an entry-level, non-supervisory position."[53]

Plaintiff has also created an issue of fact by submitting evidence that Williams's refusal to open a TFL task book for him will limit his ability to

---

51 R. Doc. 23-3 at 44:8-15 (Ali Deposition).

52 *Id.* at 59:5-25.

53 R. Doc. 23-2 ¶ 14 (Paulin Declaration).

train and qualify for future career opportunities. *See Wiley*, 511 F.3d at 157 (holding that the plaintiff suffered adverse employment action as a result of her exclusion from the managing editor rotation, which would have allowed her to gain the requisite supervisory experience for future promotions). Specifically, plaintiff points to Williams's testimony that because plaintiff was not a TFL "trainee/candidate" he was not qualified to deploy for Hurricane Harvey.[54] He also noted Williams's testimony that in determining an employee's promotion in FQS title, Williams would look at the employee's "supervision and oversight of staffing experience."[55] The Court thus finds, viewed in the light most favorable to Paulin, a factual dispute as to whether plaintiff's designation under the new model resulted in a loss of responsibility, training, deployment, and supervisory opportunities.

Because plaintiff has shown that there is a genuine issue of material fact about the only contested element of his *prima facie* case of retaliation, the Court denies defendant's motion for summary judgment on the issue of whether plaintiff suffered a materially adverse employment action. The Court expresses no opinion on any other element of plaintiff's claim.

54 R. Doc. 27-1 at 164:21-165:9 (Williams Deposition).
55 *Id.* at 164:2-4.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for summary judgment.

New Orleans, Louisiana, this 12th day of October, 2021.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE